IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LEILA MARTINEZ-BUITRAGO<br>Plaintiff<br>vs<br>INSTITUTO PSICOTERAPEUTICO DE PUERTO RICO ("INSPIRA");<br>INSTITUTO PSICOTERAPÉUTICO DE PUERTO RICO d/b/a INSPIRA MENTAL HEALTH MANAGEMENT;<br>INSPIRA MENTAL HEALTH MANAGEMENT, INC.;<br>JANE AND JOHN DOES;<br>COMPANIES A, B, C<br>Defendants | CIVIL 09-2017CCC |

## OPINION AND ORDER

The action before us is filed pursuant to the American with Disabilities Act's anti-retaliation provision, 42 U.S.C. §12203, and anti-retaliation provision of Title VII, 42 U.S.C. §2000e, et seq., as well as various supplemental claims under Puerto Rico law. Plaintiff Leila Martínez-Buitrago avers that her employer INSPIRA Mental Health Management Inc., and Instituto Psicoterapéutico de Puerto Rico (INSPIRA) began a campaign of harassment and hostility, assigning her unreasonable and excessive work tasks, and eventually discharging her because of her refusal and failure to discharge a disabled employee, Aneury Báez-Eliza.

Now before the Court is defendants' Motion to Dismiss (**docket entry 8**), which plaintiff opposed (docket entry14). Although plaintiff identifies several federal provisions in her jurisdictional paragraph which are inapplicable to this case, she identifies two federal causes of action in the body of the complaint. Plaintiff's first cause of action alleges violations of the ADA. At ¶74, Martínez-Buitrago states that she "suffered severe harassment because she resisted and opposed defendant's orders to fire [Báez] due to his disability. Although her second cause of action is entitled, "Retaliation and Local Law 115,"

CIVIL 09-2017CCC                                    2

there is no reference to any federal law. She does state at ¶80, however, that she "was fired in retaliation for her internal complaint about the discrimination against the disabled employee and her EEOC charge,[1]" so that the alleged retaliation for filing the EEOC charge could state a cause of action under §12203(a).[2]

The facts as alleged by Martínez-Buitrago in her complaint are as follows: Plaintiff alleges that she was hired in 2002 as Director of Operations (¶14). She describes her essential duties as "development of new businesses, creations of proposals for its services, monitoring the services provided by INSPIRA, representing the executive in various forums and meetings as assigned, to keep in contact with insurance carriers to obtain new businesses, among many others." (¶16).[3] In her capacity as the Director of INSPIRA's "Therapeutic Foster Homes Program," "she supervised the coordinator of the program, Aneury Báez-Eliza, (Báez) whom defendants hired in September, 2007 (¶24). A few weeks after Báez began working for INSPIRA, its president, Alberto Varela-Fernández, (Varela) and management team became aware of Báez' visual impairment known as Leber's Hereditary Optic Neuropathy (¶¶ 25-26). Martínez-Buitrago credits her direct supervisor, Varela, ordering her to prepare a plan to terminate Báez before his probationary period

---

[1]At ¶65 of the Complaint, it is stated, "In the EEOC charge, plaintiff complained that she was pressured and harassed because the disabled employee gained the permanent status at the company when its President had ordered her to fire him before the probationary term expired because of his visual disability."

[2]Plaintiff's complaint, avers that she filed an EEOC charge the week before her discharge. She has not, however, averred any internal complaint that would have served as a basis for retaliation. Her only internal objection, found in ¶67, was sent on the date she was discharged, and refers to her assignment, ten months earlier, to create a negative work record to support terminating Báez' employment.

[3]We note that in this carelessly drafted complaint, allegations are often drafted as if Báez were the plaintiff, i.e., "Despite the changes in duties and demands, plaintiff complied with all the additional demands that were imposed upon him." (¶35). From the context, it is apparent that it was Báez who was keeping up with the additional obstacles set to derail his success; not plaintiff Martínez-Buitrago.

CIVIL 09-2017CCC                              3

expired (¶28).  Martínez-Buitrago was forced to create a job description that required Báez to transport himself to various homes (¶33).

At ¶¶36 through 38, plaintiff avers the outcome of the attempts to discharge Báez before the end of his probationary period:

> On or about the month of October 2007, INSPIRA's President ordered plaintiff to prepare a narrative and detailed report that could validate Báez' early discharge due to his disability.  On December 2, 2007, Varela sent an email to plaintiff requesting the narrative she was supposed to prepare with the deficiencies of Báez.  He mentioned that Báez was a dysfunctional person and his dysfunction constituted a danger to INSPIRA. Due to a miscalculation of the days Báez was working under the probationary period, his status position at INSPIRA changed to a permanent one in December 2007, Thus, INSPIRA was unable to fire [him].

Plaintiff alleges "[d]efendants became extremely agitated as a result of the miscalculation which automatically changed Báez' status to a permanent employee, plaintiff became the object of defendants' persecution, harassment, discrimination and retaliation, culminating in her termination." (¶39.)

## I. Retaliation under the ADA

Defendants summarize one of their theories for dismissal at page 4 of their motion, "Plaintiff has failed to allege that she was discriminated because of her disability, she has not identified what impairments entitled her to a claim under ADA, much less has she averred that the impairment substantially limited one or more of her major life activities," and proceed to waste six pages of argument on this non-issue before moving to the alleged retaliation against Martínez-Buitrago, which is the basis for her federal claims.

42 U.S.C. §12203(a) states,

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

CIVIL 09-2017CCC                                    4

To establish a cause of action under this section, Martínez-Buitrago must show (1) that she engaged in protected conduct, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between the protected conduct and the adverse employment action. Wright v. CompUSA, Inc., 352 F.3d. 472, 478 (1st Cir. 2003). INSPIRA argues that, because plaintiff was acting as the Director of the Program, her refusal to terminate Báez because of his disability is not deemed a protected activity because she was responsible for protecting the company from liability for disability discrimination, and thus her conduct must be deemed "for the benefit of the company, and in accordance with its policies...." Defendants' motion, at 12.

Protecting the company from liability for disability discrimination, as defendants argue, might fall within the purview of a company's legal department or in some manner might gain the attention of the human resource personnel. However, whether such a "duty" is included in Martínez-Buitrago's job description is highly speculative. For that matter, any employee who refused to condone job discrimination or otherwise act in a manner "for the benefit of the company, and in accordance with its policies . . ." could be considered as acting within the scope of their duties.

Additionally, whether plaintiff rejected defendants' attempt to create grounds for discharging Báez is a question of relevant, material fact. She states at ¶ 32 of the complaint that she "had to instruct Báez to stop transporting himself with any person in his visits to the foster homes," and that she "was forced to create a job description that required him to transport himself to the various homes. The objective was to set him up for failure no matter what." (¶33).

**II. Civil Code of Puerto Rico Claims**

Defendants also challenge the claims brought pursuant to Article 1802-1803 under the Civil Code of Puerto Rico, inasmuch as such claims would arise from the same conduct

CIVIL 09-2017CCC                                     5

on which Martínez-Buitrago bases her claims under specific employment statutes.  See, Rosario v. McConnell Valdes, 2008 WL 509204 (D. Puerto Rico 2008); as a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802 of the Civil Code." Id., at *2, citing Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1, 16 (1994).  Plaintiff did not oppose this contention.

We, therefore, find that plaintiff has stated a claim for retaliation under the ADA, which raises questions of material fact, thereby making dismissal at this stage inappropriate. However, dismissal of the tort claims is appropriate for the reasons stated above. Accordingly, INSPIRA's Motion to Dismiss (**docket entry 8**) is GRANTED as to the claims under Articles 1802 and 1803 of the Civil Code of Puerto Rico, which are DISMISSED with prejudice.  The motion is DENIED as to the remainder of the claims.

SO ORDERED.

At San Juan, Puerto Rico, on August 13, 2010.

                                             S/CARMEN CONSUELO CEREZO
                                             United States District Judge